UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

OLLIE M. DARBY,

    Plaintiff,

vs.

UNITED STATES DEPARTMENT
OF ENERGY,

    Defendant.

Case No. 1:02-cv-933
(and consolidated cases 1:02-cv-936,
1:02-cv-937, 1:03-v-291, 1:03-cv-292)

Spiegel, J.
Black, M.J.

**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT (Doc. 18) BE GRANTED;  AND (2) THESE
CONSOLIDATED CASES BE CLOSED**

   This matter is before the Court on defendant's motion for summary judgment

(doc. 18) and the parties' responsive and supplemental memoranda (docs.  23, 31, 33,

35, 36).[2]

   Plaintiff Ollie M. Darby ("plaintiff") initiated this action on December 10, 2002,

by filing a *pro se* complaint against defendant United States Department of Energy

("defendant"), her former employer, seeking redress for unlawful racial discrimination,

retaliation, and reprisal.  (Doc. 1).

---

  [1] Attached hereto is a NOTICE to the parties regarding objections to this Report and
Recommendation.

  [2] References are to docket entries in case number 1:03-cv-933, unless otherwise noted.

The following day, December 11, 2002, plaintiff filed two more complaints against defendant, which were assigned case numbers 1:02-cv-936 and 1:02-cv-937. In each of the two new complaints, plaintiff again asserted that she sought to redress unlawful racial discrimination, retaliation, and reprisal. In each new case, Spencer Abraham, Secretary of the Department of Energy ("Secretary"), was named as an additional defendant.

Previously, on June 10, 2002, plaintiff had filed two complaints in the United States District Court for the District of Columbia against defendant and the Secretary alleging racial discrimination, retaliation, and reprisal. On November 4, 2002, the two cases were transferred to the district court for the Southern District of Ohio, Western Division, and assigned case numbers 1:03-cv-291 and 1:03-cv-292.

On October 6, 2003, at the request of the parties, the five cases were consolidated. (Doc. 13).

On May 13, 2004, defendant filed a motion for summary judgment, which is now before the Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, an African-American woman, was hired by defendant in August 1994 to work as a systems accountant for the Office of the Chief Financial Officer ("CFO"), which was part of the Ohio Field Office of defendant, Department of Energy. Plaintiff was employed at a grade level of GS-14, the second highest level of graded government

positions.  (*See* doc. 18, p. 5, n.2).  The five consolidated cases now pending arise from her complaints of discrimination and retaliation that allegedly occurred during the course of her employment with defendant.  Plaintiff retired from federal service in early 2001.

### A.    Case No. 1:02-cv-933

The lead case, No. 1:02-cv-933, arises from two Equal Employment Opportunity Commission ("EEOC") charges filed on June 22, 1997 and August 14, 1997.  The first charge alleged in part that agency officials delayed processing plaintiff's requests for a desk audit and refused to upgrade her position to grade level GS-15, despite findings that she was performing supervisory duties beyond her position description.  The second charge alleged that in reprisal for prior EEOC activity, she was removed from a Team Leader position; received low ratings of "meets expectations," which resulted in the denial of a quality step increase; and, compared with other Team Leaders, received fewer bonuses and awards.

In her complaint, plaintiff claims that the agency's handling of her requests for a desk audit, the denial of a promotion to GS-15, her removal from a Team Leader position, and the low ratings were the result of intentional discrimination based on race. She further claims that the treatment she received was in retaliation for prior EEOC activity.

### B.    Case No. 1:02-cv-936

The second case, No. 1:02-cv-936, arises from two EEOC charges filed on

December 22, 1997 and September 17, 1998.  In the first charge, plaintiff complained of continuing reprisal activity including the dissemination of memoranda containing false accusations and her compelled attendance at an allegedly secret, off-site meeting purportedly held for the purpose of harassing her.  In the second charge, plaintiff complained of the issuance of a letter of reprimand, her reassignment to a position with allegedly no duties to perform, the denial of her requests to attend specific conferences and meetings, and the denial of her requests for training.

In the ensuing complaint, plaintiff claimed that the continuing harassment was the result of intentional discrimination based on race and gender and in retaliation for her EEOC activities.

### C.    Case No. 1:02-cv-937

The third case, No. 1:02-cv-937, is based on two EEOC charges filed on July 18, 1997, and on January 9, 1997 (amended on January 8, 1998).  The first charge alleged that the CFO failed to reprimand or take other appropriate action against a white female systems accountant, Mary Murphy, who worked in a position subordinate to plaintiff. The second charge alleged harassment in retaliation for filing the underlying charge and a continued failure of the CFO to take corrective action.

In the complaint, plaintiff alleges that the CFO used Mary Murphy to harass her and to retaliate against her for filing the EEOC charge based on the failure to promote her to grade level GS-15.  She claims that the harassment and retaliation are the result of

-4-

discrimination based on race and gender.

### D.    Case No. 1:03-cv-291

In the fourth case, No. 1:03-cv-291, plaintiff again asserts that defendant engaged in intentional discrimination based on race by restricting her from performing supervisory duties at the GS-15 level and denying her a promotion to that grade level. She further asserts that a reorganization within the Office of the CFO placed her in a hostile working environment and constituted a demotion that took away her title, her job duties, and her subordinate staff accountants.  She alleges that she was given a title of "Special Assistant to the CFO" when she should have been given the title of "Deputy CFO."  The title and position of "Special Assistant" allegedly had no promotional opportunities and required her to perform GS-15 duties without GS-15 pay.

She also alleges that the Team Leader position that she formerly held was given to a white male.

### E.    Case No. 1:03-cv-292

The final case, No. 1:03-cv-292, repeats plaintiff's claims of racial discrimination and retaliation.  She again alleges that she was denied a promotion and that similarly situated white employees were give numerous promotions.

### F.    Additional Claim

Each complaint also includes the additional claim that plaintiff's rights under 29 C.F.R. Pt. 1614 have been violated.  Part 1614 provides in part that, when a federal

employee brings a charge of retaliation, subsequent retaliatory activities should be presented in an amendment to the original charge and not as a separate charge. *See, e.g.,* 29 C.F.R. § 1614.106(d) ("A complainant may amend a complaint at any time prior to the conclusion of the investigation to include issues or claims like or related to those raised in the complaint. After requesting a hearing, a complainant may file a motion with the administrative judge to amend a complaint to include issues or claims like or related to those raised in the complaint.")  Plaintiff alleges that the EEOC violated her rights when it failed to consolidate her cases.[3]

### G.     Defendant's Motion for Summary Judgment

Defendant seeks summary judgment on the grounds that plaintiff cannot make a *prima facie* showing of discrimination in any of the five cases.  Additionally, and in the

---

[3]     The allegations supporting her procedural due process claim are as follows:

> The circumstances of Discrimination and retaliation and reprisal are the result of the same circumstances and Management officials. The above numbers assigned to this related case are significant because the 98 means processing by DOE in 1998; Notice this case is 98(006)OH and the related case is 98(007)OH.  Plaintiff rights have been violated by both DOE and EEOC under Fragmentation of 29 CFR, Part 1614–Federal Sector Equal Employment, effective Opportunity, effective, November 1999.  "Where a complainant raises a claim of retaliation or a claim involving terms and conditions of employment, subsequent events or instances involving the same claim should not be filed as separate complaints, but should be treated as part of the first claim....Complainants may now amend complaints to add issues or claims that are like or related to the original complaint any time prior to the conclusion of the investigation....New regulations will require agencies to consolidate two or more complaints filed by the same complainant.."  The EEOC had the authority to consolidate these two cases.

(*E.g.,* doc. 1, p. vi) (Case No. 1:03-cv-033) (punctuation original).

alternative, defendant maintains that plaintiff cannot show that the legitimate nondiscriminatory reasons given for its employment actions were pretextual.

## II.  STANDARD OF REVIEW

Summary judgment is proper if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the governing substantive law, might affect the outcome of the action. *Anderson*, 477 U.S. at 248.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

In response to a properly supported motion, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.  *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion.  *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990) (citing *Patterson v. General Motors Corp.,* 631 F.2d 476, 482 (7th Cir. 1980), *cert. denied,* 451 U.S. 914  (1981)).

The Court's function is not to weigh the evidence and determine the truth of the matters asserted but to determine if there is a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 249.  The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts.  *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied sub nom. Superior Roll Forming Co. v. Interroyal Corp.,* 494 U.S. 1091 (1990).  Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute.  *Anderson,* 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05.

## III.  SUBSTANTIVE LAW

### A.    Disparate Treatment

A discrimination claim under Title VII may be based on disparate treatment, which occurs "when an employer treats some employees less favorably than others because of race, religion, sex, or the like."  *See Huguley v. General Motors Corp.,* 52 F.3d 1364, 1370 (6th Cir. 1995) (citing *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 335-36 n.15 (1977)).  A discrimination claim based on disparate treatment requires proof of discriminatory motive.  *Huguley,* 52 F.3d at 1370.

In order to prevail on her claim, plaintiff bears the initial burden of establishing a

-8-

*prima facie* case of discrimination by a preponderance of the evidence.  *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *Simon v. City of Youngstown,* 73 F.3d 68, 70 (6th Cir. 1996).  In order to make this showing, in the absence of direct evidence of discrimination, plaintiff must demonstrate: (1) that she was in a protected class; (2) that she was qualified for the job that she held during the time in question; (3) that she suffered an adverse employment action; and (4) that she was treated differently than similarly-situated individuals who were not members of her protected class.  *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp.*, 411 U.S. at  802-03.

To sufficiently allege an adverse employment action, plaintiff must show a "materially adverse change in the terms of ... employment, [such as] termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities." *Kocsis v. Multi-Care Mgmt, Inc.,* 97 F.3d 876, 885-86 (6th Cir. 1996) (internal quotation marks and citations omitted).  The Sixth Circuit has consistently held that *de minimis* employment actions are not materially adverse and, thus, not actionable.  *Bowman v. Shawnee State Univ.,* 220 F.3d 456, 462 (6th Cir. 2000).  The "change in employment conditions 'must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Vitt v. City of Cincinnati*, No. 03-3080, 2004 WL 1147256, at *4 (6th Cir. May 20, 2004) (unpublished) (quoting *Kocsis,* 97 F.3d at 886).

The Sixth Circuit also has defined "similarly situated" employees for purposes of evaluating employment discrimination claims.  "Similarly situated" employees are employees who "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992).

If plaintiff makes a *prima facie* showing, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the action taken.  *See Burdine,* 450 U.S. at 253.  If defendant is able to meet this burden, plaintiff is then required to prove by a preponderance of the evidence that the legitimate reasons offered by defendant were a pretext for discrimination.  *Id.*  A plaintiff can demonstrate pretext by: (1) offering proof that the given reason did not exist in fact; (2) establishing that, while the given reason is factual, it was not the true reason for the allegedly discriminatory action; or (3) showing that the given reason was not sufficient for the action.  *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1084 (6th Cir. 1994).  The ultimate burden of persuading the trier of fact that defendant intentionally discriminated against plaintiff remains at all times with plaintiff.  *See Burdine,* 450 U.S. at 253.

If plaintiff is unable to produce any evidence that would suggest that the reason for the disparate treatment was pretextual, the court need not address the issue of whether plaintiff has made out a *prima facie* case of discrimination.  *See Coomer v.*

*Bethesda Hosp., Inc.,* 370 F.3d 499, 510-11 (6th Cir. 2004) (applying the *McDonnell Douglas* burden-shifting analysis to an age discrimination claim).

    **B.    Retaliation**

An employment discrimination claim also may be based on retaliation.  The same burden-shifting scheme applies in retaliation cases as to disparate treatment claims.

In order to find a *prima facie* showing of retaliation under Title VII, a plaintiff must prove by a preponderance of the evidence: (1) that she engaged in activity protected by Title VII; (2) that her exercise of such protected activity was known by defendant; (3) that, thereafter, defendant took an employment action adverse to plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action.  *DiCarlo v. Potter,* 358 F.3d 408, 420 (6th Cir. 2004) (citations omitted).

It is well established that filing a discrimination charge with the EEOC is a protected activity.  *See Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 930 (6th Cir. 1999).

To establish a causal connection between the protected activity and the adverse employment action, plaintiff must present evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse action."  *Equal Employment Opportunity Comm'n v.  Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir. 1997) (quoting  *Zanders v. National R.R. Passenger Corp.,* 898 F.2d 1127, 1135 (6th Cir.

1990) (citations omitted)).

Temporal proximity alone, without additional evidence of a retaliatory animus, will not suffice to support a finding of a causal connection. *Hafford v. Seidner,* 183 F.3d 506, 514 (6th Cir. 1999). The causal connection however may be established by demonstrating that the adverse action was taken shortly after plaintiff filed a complaint and by showing that she was treated differently from other employees. *See Moore v. KUKA Welding Sys. & Robot Corp.,* 171 F.3d 1073, 1080 (6th Cir. 1999).

If a *prima facie* case is proven, then the same last two steps apply as in other discrimination cases. *See Skrjanc v. Great Lakes Power Serv. Co.,* 272 F.3d 309, 315 (6th Cir. 2001). That is, defendant must articulate a legitimate, nondiscriminatory reason for the action taken and, if defendant is able to meet this burden, plaintiff must prove that the legitimate reasons offered by defendant were a pretext for discrimination. *See Burdine,* 450 U.S. at 253.

### C. Harassment, or Hostile Environment

A claim of discrimination may also be based on "severe or pervasive" harassment. Moreover, such harassment as occurs following a discrimination complaint can constitute retaliation for the purposes of a Title VII action. *See Akers v. Alvey,* 338 F.3d 491, 498 (6th Cir. 2003) (citations omitted).

The standard for "severe or pervasive" harassment is "the same in the retaliation context as in the sexual and racial discrimination contexts." *Id.* (quoting *Broska v.*

-12-

*Henderson,* No. 01-4013, 2003 WL 21518733, at *4 (June 30, 2003)).  "Under this standard, the harassment must be 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'"  *Id.* (citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993)).  This test has both an objective and a subjective component:  the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive, and the victim must subjectively regard that environment as hostile or abusive.  *Id.*  (citation omitted).

Isolated incidents, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment.  *Morris v. Oldham County Fiscal Court,* 201 F.3d 784, 790 (6th Cir. 2000).  Appropriate factors for the court to consider when determining whether conduct is severe or pervasive enough to constitute a hostile work environment include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.  *Harris,* 510 U.S. at 23.

Whether harassment is sufficiently severe or pervasive to create an abusive work environment is "quintessentially a question of fact."  *Crawford v. Medina Gen. Hosp.,* 96 F.3d 830, 835-36 (6th Cir. 1996) (citation omitted).  Nonetheless, harassing conduct, even if severe, is not actionable absent significant, probative evidence that the alleged harassing acts were based upon plaintiff's status as a member of a protected class.  *See*

*Bowman,* 220 F.3d at 463-64.

## IV.  ANALYSIS

### A.    Case No. 1:02-cv-933

In the lead case, No. 1:02-cv-933, plaintiff claims that defendant's handling of her requests for a desk audit, the denial of a promotion to GS-15, her removal from a Team Leader position, and the low ratings were the result of intentional discrimination based on race.  (*See* doc. 1).

She maintains that, while her requests for promotion were denied, a white female employee with lesser qualifications was promoted several times before finally reaching the level of GS-15 in a supervisory Budget Director position.  (*See id.* at ¶ 10).  She also alleges that white employees in Team Leader positions received more and higher bonuses and awards.  (*Id.* at ¶ 13).

Plaintiff further claims that the treatment she received was in retaliation for prior EEOC activity.  In support of her claim, she alleges that the retaliation and reprisal activities began after her first case was filed on July 22, 1997.  (*Id.* at p. iv).

Defendant is entitled to summary judgment with respect to these claims because plaintiff has not met her burden of showing intentional discrimination.

First, plaintiff cannot make a *prima facie* showing of discrimination as a result of the alleged mishandling of her requests for a desk audit because it does not represent a "materially adverse change in the terms of ... [her] employment."  *See Kocsis,* 97 F.3d at

885-86.  Her claims she received low ratings fail for the same reason.  A low

performance evaluation, even one that results in the loss of bonuses and awards, is not a

qualifying adverse employment action.  *See Primes v. Reno,* 190 F.3d 765, 767 (6th Cir.

1999); *see also Rabinovitz v. Pena,* 89 F.3d 482, 488-89 (7th Cir. 1996) (low

performance evaluation and consequent ineligibility for discretionary bonus not

actionable adverse employment action).

Second, plaintiff cannot make a *prima facie* showing of discrimination as a result

of the alleged failure of defendant to promote her to a grade level GS-15 or as a result of

her removal from a Team Leader position.  With respect to each of these claims, plaintiff

failed to identify any individuals who were "similarly situated" individuals who received

more favorable treatment.  While plaintiff has taken care to identify white employees

who were under the same "chain of command" (*see* doc. 23, pp. 7-8), she has not

produced any evidence to show that they were "subject to the same standards and  ...

engaged in the same conduct without such differentiating or mitigating circumstances

that would distinguish their conduct or the employer's treatment of them for it."  *See*

*Mitchell,* 964 F.2d at 583.

Plaintiff's claims of retaliation and reprisal also fail.  She has not provided any

evidence to create even an inference that a causal connection exists between her EEOC

activities and the alleged adverse employment actions.  Her claim of reprisal is based

solely on the allegation that the events she complains of occurred after she filed her first

EEOC complaint, 97(175)OH, on July 22, 1997. (*See* doc. 36, p. 4). As previously noted, "[t]emporal proximity alone, without additional evidence of a retaliatory animus, will not suffice to support a finding of a causal connection." *Hafford,* 183 F.3d at 616. Plaintiff has provided no evidence of retaliatory animus nor shown that she was treated differently from other employees. *See Moore,* 171 F.3d at 1080.

Her allegation that her reassignment as "Special Assistant" alienated her from other staff members does not establish a claim of hostile environment or retaliatory harassment. *See Strother v. Southern California Permanente Medical Group,* 79 F.3d 859, 869 (9th Cir. 1996) (noting that ostracism does not amount to a hostile environment) (citation omitted).

Finally, plaintiff did not present any evidence to rebut defendant's reasons for its actions. For example, in support of its decision to reassign plaintiff, defendant presented evidence that she was not an effective Team Leader. (*See, e.g.,* doc. 18, ex. 3, ¶¶ 10, 13) ("[plaintiff] created a great deal of friction and hostility in the Financial Review Team. ... After [plaintiff] was removed as a Team Leader, the morale of the Financial Review Section as well as its productivity increased."); *see also id.* at ex. 4, ¶¶ 7-9). Plaintiff cannot meet her burden of showing that the reason was pretextual.

### B. Case No. 1:02-cv-936

In Case No. 1:02-cv-936, plaintiff bases her discrimination claim on allegations of continuing reprisal activity, including the dissemination of memoranda containing false

accusations and her compelled attendance at an allegedly secret, off-site meeting; the issuance of a letter of reprimand; her reassignment to a position with no duties to perform; the denial of her requests to attend specific conferences and meetings; and the denial of her requests to attend continuing education for a C.P.A.  She contends that ongoing harassment was the result of intentional discrimination based on race and gender and in retaliation for her EEOC activities.

Plaintiff's allegations of harassment do not establish a hostile environment claim because they do not include any evidence tying the alleged harassment to her status as African-American or female.  *See Bowman,* 220 F.3d at 463-64.  Moreover, she has not produced any evidence to support her claim of false accusations based on gender or race.

She cannot show that the so-called secret meeting was in retaliation for prior EEOC activity because it was scheduled in July 1996, prior to  plaintiff's first EEOC claim filed in of July 1997.  (*See* doc. 18, p. 24; *id.,* ex. 3, ¶¶ 8-9).  Further, she did not present any evidence to show that the proffered reason for the meeting, to resolve other employees' concerns about interacting with plaintiff  (*see id.,* ex. 3, ¶¶ 8-9), were pretextual.

Additionally, the issuance of a single letter of reprimand is insufficient to establish "pervasive" harassment, even if found to be "severe."  *See Morris,* 201 F.3d at 790.  In any event, plaintiff did not present any evidence to rebut defendant's offer of a legitimate nondiscriminatory reason for the reprimand.  Plaintiff has not shown that the

-17-

given reason, that she acted unreasonably in sending a certified letter to another manager that resulted in a waste of funds and a waste of the manager's time, did not exist in fact; was not the true reason for reprimand; or that the reason was not sufficient for defendant's action.  *See Manzer*, 29 F.3d at 1084.

Plaintiff's claim that she was removed from a Team Leader position does not establish her claim of discrimination.  As previously noted, defendant has explained that the reassignment was necessary in light of numerous complaints made against the plaintiff.  (*See* doc. 18, ex. 3,  ¶¶ 10-12).  Plaintiff has failed to present any evidence to rebut defendant's offer of a legitimate nondiscriminatory reason for its action.

As further evidence of discrimination, plaintiff alleges that management denied her requests to attend specific training conferences and also denied her requests for CPA training.  Her allegations are insufficient to make a *prima facie* showing of discrimination because a failure to provide training or to allow her to attend seminars is not an adverse employment action.  *See Vitt*, 2004 WL 1147256, at *4 (citing *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir. 1999)).

**C.    Case No. 1:02-cv-937**

In her third complaint, Case No. 1:02-cv-937, plaintiff states that the CFO failed to reprimand or take other appropriate action against a white female systems accountant, Mary Murphy; and that the CFO used Mary Murphy to harass her and to retaliate against her for filing the EEOC charge based on the failure to promote her to grade level GS-15.

She claims that the harassment and retaliation are the result of discrimination based on race and gender.

In support of her claim, plaintiff states that Ms. Murphy complained to management about her (*see* doc. 18, ex. 20), and accused plaintiff of looking through her trash.  In an attempt to prevent plaintiff from entering her workspace, Ms. Murphy went so far as to install a motion detector and alarm, which was subsequently set off by a janitor.  In turn, plaintiff filed a police complaint against Ms. Murphy stating that she had taken plaintiff's name plate from her office and thrown it in the trash.  Plaintiff contends that Ms. Murphy was not disciplined for these activities or for other failings such as being absent from work.  Plaintiff's claim lacks merit.

Plaintiff cannot rely on the allegation that Ms. Murphy was treated differently to establish a *prima facie* case of discrimination because she cannot show that Ms. Murphy, who was employed in a subordinate position, was "similarly situated."

Moreover, plaintiff has not shown that the conflict between her and Ms. Murphy was the result of discriminatory animus.  Where, as here, alleged reprisal activities are more consistent with personal dislike than discriminatory animus, there is no showing of hostile environment or unlawful retaliation.  *See Barnett v. Department of Veterans Affairs,* 153 F.3d 338, 342-43 (6th Cir. 1998), *cert. denied,* 525 U.S. 1106 (1999).

More importantly, however, the Sixth Circuit does not recognize co-worker retaliatory harassment as a valid cause of action.  *Swanson v. Livingston County,* No. 03-

-19-

1798, 2005 WL 95737, at *4 (6th Cir. Jan. 19, 2005) (unpublished).

In any event, plaintiff's claim of retaliatory harassment by Ms. Murphy would fail. Even if Ms. Murphy's hostility towards her were shown to be sufficiently severe, *see Gunnell v. Utah Valley State Coll.,* 152 F.3d 1253, 1264 (10th Cir. 1998), plaintiff must also present evidence that the hostility was the result of plaintiff's EEOC complaints. *See Dick v. Phone Directories Co.,* ___ F.3d ___, ___, 2005 WL 327702, at *9 (10th Cir. Feb. 11, 2005). Plaintiff has failed to present any evidence to support her claim.

### D.    Case No. 1:03-cv-291

Next, in Case No. 1:03-cv-291, plaintiff reasserts her claim that defendant retaliated against her or engaged in intentional discrimination based on race by restricting her from performing supervisory duties at the GS-15 level and denying her a promotion to that grade level. She further asserts that a reorganization within the Office of the CFO placed her in a hostile working environment and constituted a demotion that took away her title, her job duties, and her subordinate staff accountants. She contends that defendant used her former duties to create a new GS-15 position, for which she applied but was not chosen. Finally, she alleges that the original Team Leader position that she held was given to a white male.

Plaintiff cannot make a *prima facie* showing of race discrimination with respect to her allegation that she was not chosen for the newly created GS-15 position because the

position was given to another African-American, and not to a person outside of plaintiff's protected class.

Plaintiff's claim that she was placed in a position where she could not act at the GS-15 level does not establish a claim of retaliation.  There is no evidence that the alleged restriction of responsibilities is causally connected to her EEOC activities.

In any event, there is no evidence to show that the reasons given for the reorganization, based on consideration of performance and overall productivity of the organization, were pretextual.

### E.    Case No. 1:03-cv-292

In Case No. 1:03-cv-292, plaintiff repeats her claims of racial discrimination and retaliation based on the denial of her application for the new GS-15 Accounting Officer position.

As previously noted, her claims lack merit. She has not shown that white employees who were allegedly given numerous promotions were similarly situated. Because the position was given to an African-American, she cannot show that the position was given to someone outside of her protected class.

### F.    Additional Claim

Plaintiff's final claim is that the EEOC violated her rights by failing to consolidate two of her complaints, 98(006)OH and the related case 98(007)OH.

This claim is not properly before the Court because the EEOC is not a party

defendant in this case. *See G.P. Renflo, Inc. v. Renaissance by Lake Ivanhoe, Inc.,* No. 94-1823, 1995 WL 697222, at *3 (6th Cir. Nov. 21, 1995) (*per curiam*).

The claim, moreover, lacks merit because plaintiff has no cause of action against the EEOC for improper handling of her complaints. *See Ward v. Equal Employment Opportunity Comm'n,* 719 F.2d 311, 313-14 (9th Cir. 1983), *cert. denied,* 466 U.S. 953, *reh'g denied,* 468 U.S. 1227 (1984).

It is well established that Congress has not authorized – either expressly or impliedly, either in Title VII or elsewhere – "a cause of action directly against the EEOC for misprocessing of claims asserted against third-party employers." *E.g., Scheerer v. Rose State College,* 950 F.2d 661, 662-63 (10th Cir. 1991) (noting that courts have "uniformly" so held), *cert. denied,* 505 U.S. 1205 (1992); *see also Francis-Sobel v. University of Maine,* 597 F.2d 15, 17-18 (1st Cir.), *cert. denied,* 444 U.S. 949 (1979); *see also Johnson v. Rodriguez,* 943 F.2d 104, 108-09 (1st Cir. 1991), *cert. denied,* 502 U.S. 1063 (1992). Instead, the ability to pursue *de novo* judicial proceedings under Title VII against the party allegedly engaged in discrimination was intended to be "the all-purpose remedy for charging parties dissatisfied with the EEOC's handling of their charge." *Ward,* 719 F.2d at 314 (quoting *Hall v. Equal Employment Opportunity Comm'n,* 456 F. Supp. 695, 701 (N.D. Cal. 1978)).

F.     **"Glass Ceiling" Claim**

Additionally, taken as a whole, plaintiff's five complaints may be construed to

-22-

suggest that the conditions of her employment created a "glass ceiling" that prevented her, as an African-American woman, from attaining any grade level beyond GS-14.

A "glass ceiling" is the use of a policy or practice to exclude members of a protected class from upper levels of the workforce. *Bethel v. Porterfield,* 293 F. Supp. 2d 1307, 1326 (S.D. Ga. 2003) (citation omitted); *see also Luciano v. Olsten Corp.,* 110 F.3d 210, 216 (2d Cir. 1997).

The Sixth Circuit has recently determined that "the pattern-or-practice method of proving discrimination is not available to individual plaintiffs." *Bacon v. Honda of America,* 370 F.3d 565, 575 (6th Cir. 2004), *cert. denied,* ___ S. Ct. ___, 2005 WL 40697 (Feb. 22, 2005); *see also Herendeen v. Mich. State Police,* 39 F. Supp. 2d 899, 905 (W.D. Mich. 1999).  Such pattern-or-practice evidence, however, may be relevant to proving an otherwise-viable individual claim for disparate treatment under the *McDonnell Douglas* framework.  *Bacon,* 370 F.3d at 575 (citations omitted).

Plaintiff cannot use such evidence to prove gender and race discrimination where, as in this case, other women and at least one other African-American received promotions of the type for which plaintiff applied.  *See id.* at 576.  Moreover, plaintiff's "bare recitation" of the names of other individuals who received promotions does not satisfy the similarly situated prong.  *See Hoffman-Dombrowski v. Arlington Int'l Racecourse,* 254 F.3d 644, 651-52 (7th Cir. 2001).  Plaintiff must show that the employees with whom she seeks to compare herself were similar in "all of the relevant

aspects" of their employment.  *See Ercegovich v. Goodyear Tire & Rubber Co.,* 154

F.3d 344, 352 (6th Cir. 1998) (citing *Pierce v. Commonwealth Life Ins. Co.,* 40 F.3d

796, 802 (6th Cir. 1994)).  Based on the materials submitted by plaintiff in opposition to

the motion for summary judgment, plaintiff cannot meet this standard.

## CONCLUSION

Plaintiff has not met her burden of showing that a genuine issue of material fact

exists with respect to her claims of discrimination, retaliation and reprisal.

**IT IS THEREFORE RECOMMENDED THAT** defendant's motion to dismiss

and for summary judgment (doc. 18) should be **GRANTED**.  As no further matters

remain pending for this Court's review, it is further recommended that this case should

be **CLOSED.**


Date:  3/8/05                                  s/Timothy S. Black
                                               Timothy S. Black
                                               United States Magistrate Judge

-24-

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

OLLIE M. DARBY,                                          Case No. 1:02-cv-933
                                                        (and consolidated cases 1:02-cv-936,
                     Plaintiff,                         1:02-cv-937, 1:03-v-291, 1:03-cv-292)

vs.                                                     Spiegel, J.
                                                        Black, M.J.

UNITED STATES DEPARTMENT
OF ENERGY,

                     Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after being served with a copy thereof.  That period may be extended by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the Report and Recommendation objected to and shall be accompanied by a memorandum of law in support of the objections.  A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).